UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| MASTER RASHID, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:23-cv-722 (VAB) |
| | : | |
| KALICAN KURTULUS, et al., | : | |
| Defendants. | : | |
| | : | |

**INITIAL REVIEW ORDER**

Master Rashid ("Plaintiff"), currently confined at Cheshire Correctional Institution in

Cheshire, Connecticut, has filed a 196-page Complaint *pro se* under 42 U.S.C. § 1983.  Mr.

Rashid names twenty-two defendants, Kurtulus Kalican,[1] Lieutenant Jerome Ffrench, Officer

Briggs, Officer John Doe 1, Officer John Doe 2, Officer John Doe 3, Officer Doe 4, Officer Doe

5,  Lieutenant Doe 6, Lieutenant Doe 7, Lieutenant Doe 8, Lieutenant/DHO Grimaldi,

Officer/Investigator Reyes, Officer/Investigator Santaniello, Warden Doe, Deputy Warden

Pierce, Captain Blackstock, Officer Schiender, Officer Bell, APRN Deborah Broadley, Dr.

Richard Williams, and CHN/HSRC Debra Cruz.

The Prison Litigation Reform Act requires that federal courts review complaints brought

by prisoners seeking relief against a government entity or officer or employee of a government

entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion

---

[1] Mr. Rashid names this defendant, as Kalican Kurtulus in the case caption.  Records available on the Department of Correction website, however, show that his name is Kurtulus Kalican.  *See* www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=314840.  The Court may take judicial notice of matters of public record.  *See, e.g., Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Kelley v. Quiros*, No. 3:22-cv-1425(KAD), 2023 WL 1818545, at *2 (D. Conn. Feb. 8, 2023) (taking judicial notice of state prison website inmate locator information).  The Court uses the defendant's correct name in this order and requests the Clerk to correct the docket.

of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations therein under 28 U.S.C. § 1915A.

Based on this initial review, the Court orders as follows.

All claims asserted in sub-complaints two through four are **SEVERED** under Federal Rule of Civil Procedure 21 and **DISMISSED** without prejudice to refiling in separate actions.

The Clerk of Court is directed to terminate defendants Pierce, Blackstock, Schiender, Bell, Broadley, Cruz, and Williams from this action.

All Fourteenth Amendment claims for denial of substantive and procedural due process and equal protection of the laws, all claims against inmate Kalican, all requests for declaratory and injunctive relief, and all requests for damages against the defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and (2).

The Clerk of Court also is directed to terminate defendants Grimaldi, Reyes, Santaniello, and Warden Doe from this action.

The case will proceed on the Eighth Amendment claims relating to the use of force and failure to intervene against defendants Does 1-8, Ffrench, and Briggs in their individual capacities and the Eighth Amendment conditions of confinement claim regarding confinement in restraints and denial of access to a bathroom against defendants Does 1-8 and Ffrench in their individual capacities.

 Mr. Rashid's motion for preliminary injunction or temporary restraining order [**ECF No. 9**] is **DENIED**.

## I.     <u>Factual Background</u>

The incidents underlying this action allegedly occurred while Mr. Rashid, a Virginia inmate confined in Connecticut under the Interstate Corrections Compact, was confined at MacDougall-Walker Correctional Institution.

On February 10, 2022, Mr. Rashid allegedly was lying on his bunk after receiving his evening medication, when an officer allegedly instructed Mr. Rashid to go to the officer's station. When he allegedly arrived, he allegedly was told that he was wanted in the main corridor. When Mr. Rashid allegedly opened the door to the main corridor, he allegedly saw fifteen officers standing in a dimly lit corner. The officers allegedly told Mr. Rashid to "step out" but he allegedly became fearful and ran back into the housing unit. *Id.* at 2, ¶ 1.

The officers allegedly followed Mr. Rashid who entered the housing unit with his fist raised in the air. The officers allegedly repeatedly sprayed Mr. Rashid with a chemical agent, threw him to the floor, jumped on him, and kicked him. Lieutenant Ffrench allegedly sprayed Mr. Rashid with the first can of the chemical agent. Mr. Rashid allegedly assumed that the officers acted this way because he was a "new arrival transfer offender." *Id.* ¶ 2. Mr. Rashid alleges that he has a serious heart condition, for which he takes daily medication and has access to nitroglycerin, as well as multiple spinal issues, which preclude exposure to chemical agents. *Id.*

As Officer Doe allegedly took Mr. Rashid to the floor, Mr. Rashid allegedly yelled that he was unable to breathe because of the chemical agent, but officers allegedly continued to spray him. Other Officers Doe allegedly punched him in the face and one officer allegedly had him in a choke hold. Other Officers Doe allegedly yanked on his handcuffed arms, allegedly trying to break his arms. An Officer Doe allegedly picked Mr. Rashid off the floor and slammed his face into the wall. *Id.* at 3, ¶ 3.

Mr. Rashid allegedly had a mask over his face that became soaked with the chemical agent. He allegedly continued to yell that he was unable to breathe. Mr. Rashid also allegedly was blinded by the chemical agent and could not see anything. Mr. Rashid allegedly was dragged down the hall to restrictive housing where his clothes were removed and he was strip searched. Mr. Rashid allegedly was then dressed in a jumpsuit, shackled, and handcuffed. He allegedly complained that the handcuffs were too tight, but no one did anything. *Id*. ¶ 4.

A nurse allegedly came into the cell and poured saline solution over Mr. Rashid's head and face. When he allegedly complained that his skin was burning and he could not see, the nurse allegedly said, "this would have to do." *Id*. at 4, ¶ 4.  Mr. Rashid allegedly was confined in the cell for hours. Officers allegedly refused his request to have the restraints removed so he could use the bathroom. As a result, Mr. Rashid allegedly soiled himself.  *Id*.

Approximately 12:30 a.m. on February 11, 2022, several officers and lieutenants and a state trooper allegedly came to Mr. Rashid's cell. He allegedly was brought to a conference room where the state trooper charged him with assault. Mr. Rashid allegedly denied assaulting anyone. *Id*. ¶ 5.

The officers allegedly told Mr. Rashid that inmate Kalican allegedly said that Mr. Rashid had punched him in the face. Mr. Rashid allegedly admitted that inmate Kalican had been his cellmate for a few weeks before Mr. Rashid contracted COVID-19, but allegedly claimed that inmate Kalican had been moved before Mr. Rashid returned to his cell. Mr. Rashid allegedly said that surveillance footage would show that he never touched inmate Kalican. *Id*. at 4-5, ¶ 6. The officers allegedly told Mr. Rashid that there was no surveillance footage of the assault and there were no witnesses.  *Id*. at 5, ¶ 7. After he allegedly was charged, Mr. Rashid allegedly was taken to another cell where he was given clean underwear and the restraints were removed.  *Id*. at 5-6,

¶ 10.

Lieutenant Ffrench allegedly issued a disciplinary report charging Mr. Rashid with assault on a correctional employee and a second identical report charging him with interfering with safety and security. *Id*. at 6, ¶ 11. Mr. Rashid also allegedly received a disciplinary report for assaulting inmate Kalican. The report allegedly did not state that Mr. Rashid was seen making physical contact with inmate Kalican or engaging in a heated conversation with him. *Id*. ¶ 12.

Officer Briggs allegedly filed a report stating that he witnessed a crowd of inmates in the vestibule between housing units H1 and H2 and saw an agitated Mr. Rashid backing away from the H2 door heading toward the main concourse. *Id*. ¶ 13. Officer Briggs allegedly stated that he then noticed inmate Kalican on the floor covered with blood. *Id*. ¶ 14.

Between February 11 and 14, 2022, Warden Doe allegedly made a security check in restrictive housing. Mr. Rashid allegedly told the warden that he did not do anything and that there was no proof that he assaulted inmate Kalican. Warden Doe allegedly told Mr. Rashid that he would be "ok" after the hearing and directed him to address his concerns with Investigator Reyes. *Id*. at 7, ¶ 15.

Investigator Reyes allegedly spoke with Mr. Rashid on February 14, 2022. Investigator Reyes allegedly told Mr. Rashid that the security footage did not show him assaulting inmate Kalican. He allegedly asked Mr. Rashid if he would plead guilty to the charge of assaulting staff. Mr. Rashid allegedly responded that he could not enter a plea when the security footage would show that he ran away and did not assault anyone. *Id*. at 7-8, ¶ 16. Investigator Reyes allegedly spoke to the warden. After allegedly reviewing the surveillance footage, the warden allegedly recommended that Mr. Rashid enter a plea to attempted assault and accept a sanction of nine days. Mr. Rashid allegedly refused. *Id*. at 8, ¶ 18.  At the disciplinary hearing, after the charges

were read, Disciplinary Hearing Officer Lieutenant Grimaldi allegedly told Mr. Rashid that he

could get out of restrictive housing if he pleaded guilty to assaulting a correctional employee.

Mr. Rashid allegedly said he could not plead guilty when the disciplinary report did not identify

one staff member he allegedly assaulted. He allegedly pleaded guilty, however, to get out of

restrictive housing. *Id*. at 8-9, ¶ 19.

When Lieutenant Grimaldi allegedly asked about the assault on inmate Kalican, Mr. Rashid

allegedly denied doing anything and stated that if he had assaulted inmate Kalican he would have

had blood on him. Mr. Rashid allegedly asked Lieutenant Grimaldi to review surveillance

footage. *Id*. at 9, ¶ 20. Lieutenant Grimaldi allegedly found Mr. Rashid guilty of the assault. As

evidence, he allegedly cited inmate Kalican's statement, the fact that the two inmates had issues

before, a matter Mr. Rashid denies, and the fact that Mr. Rashid was nearby and appeared

agitated. Mr. Rashid's appeal of the disciplinary finding allegedly was denied. *Id*. ¶ 21. Mr.

Rashid allegedly was sanctioned with three days confinement in punitive segregation, thirty days

loss of visits, and thirty days loss of mail. *Id.* at 40.

## II.    <u>Discussion</u>

Mr. Rashid asserts the following claims based on these allegations: (1) an Eighth

Amendment claim that defendant Kalican falsely stated, without any proof, that Mr. Rashid

assaulted him; (2) an Eighth Amendment claim that defendants Does 1-8, Ffrench, and Briggs

used excessive force against Mr. Rashid or failed to intervene to prevent the use of force; (3)

Eighth and Fourteenth Amendment claims that defendants Does 1-8 and Ffrench allowed Mr.

Rashid to be restrained for hours without bathroom access; (4) a Fourteenth Amendment claim

that defendants Grimaldi, Reyes, Santaniello, and Warden Doe permitted disciplinary action to

be taken against Mr. Rashid for assaulting inmate Kalican without any evidence supporting the charge and with an inadequate written disposition; and (5) Fourteenth Amendment claims that defendants Ffrench, Does 1-8, and Briggs permitted false disciplinary and criminal action to be taken against Mr. Rashid.

As a preliminary matter before considering these substantive claims, the Court will address Mr. Rashid's rather lengthy Complaint.

### A. Joinder

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Dixon v. Scott Fetzer Co*., 317 F.R.D. 329, 331 (D. Conn. 2016) (citation and quotation marks omitted). "The same transaction requirement means that there must be some allegation that the joined defendants conspired or acted jointly." *Arista Records LLC v. Does 1-4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) (citation and quotation marks omitted).

As the Second Circuit has observed in the context of Rule 13 of the Federal Rules of Civil Procedure, whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claim and whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

Mr. Rashid's Complaint consists of 196 pages and combines four separate sub-complaints.

The first sub-complaint, pages 2-64, asserts claims for use of excessive force, failure to protect, and denial of due process relating to the February 20, 2022 incidents and a subsequent disciplinary hearing. The Defendants identified in the first sub-complaint are Kalican, Does 1-8, Lieutenant Ffrench, Officer Briggs, Disciplinary Hearing Officer Lieutenant Grimaldi, Investigators/Officers Santaniello and Reyes, and Warden Doe.

The second sub-complaint, pages 65-73, asserts a conditions of confinement claim relating to the condition of the showers in September 2022.  Defendants Blackstock and Pierce are named in the second sub-complaint.

The third sub-complaint, pages 74-81, asserts claims for unconstitutional conditions of confinement and denial of equal protection relating to an inoperable toilet and a cell flooded with sewage on October 6, 2022. Defendants Bell, Schiender, and Blackstock are named in the third sub-complaint.

The fourth sub-complaint, pages 116-96, concerns medical treatment. Defendants Cruz, Broadley, and Williams are named in this claim.  Pages 81-115 are exhibits in support of the claims in sub-complaints two and three.

The claims in the four sub-complaints are topically unrelated and involve different defendants. Indeed, Captain Blackstock is the only Defendant named in more than one sub-complaint. As the claims arise from different events, it is appropriate to sever the sub-complaints and have each sub-complaint proceed in a separate action. *See Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 264 (D. Conn. 2012) (severance may be appropriate when claims "arise from different circumstances and would require separate analyses.").

Accordingly, the claims in sub-complaints two through four are severed and dismissed without prejudice as improperly joined.  If Mr. Rashid wishes to pursue these claims, he may do so in separate actions. *See* Fed. R. Civ. 21 ("The court may ... sever any claim against a party.").

The Court next will consider the claims in the first sub-complaint regarding the use of excessive force and the subsequent disciplinary hearing.

B.  The Claims Against Another Inmate

Private citizens generally are not subject to liability under section 1983. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). For the actions of a private party to be imputed to the state, there must be facts alleged showing "a sufficiently close nexus between the State and the challenged action of [the private defendants] so that the action ... may fairly be treated as that of the State itself."  *NCAA v. Tarkanian*, 488 U.S. 179, 192 n.12 (1988) (citations omitted); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (a private party may be held liable if it was "a willful participant in joint activity with the State or its agents").

In his first claim, Mr. Rashid alleges that Mr. Kalican violated his Eighth Amendment rights by providing correctional staff false information. To state a Section 1983 claim against Mr. Kalican, however, Mr. Rashid must allege facts showing that persons acting under color of state law deprived him of constitutional or federally protected rights.

But Mr. Rashid alleges only that inmate Kalican accused him of assault. Mr. Rashid alleges no facts suggesting that any defendant was involved in his doing so. Mr. Rashid also has not alleged facts suggesting that inmate Kalican's actions could be imputed to the state defendants. Thus, he fails to state a cognizable claim against inmate Kalican.

Accordingly, any claims against inmate Kalican are dismissed under 28 U.S.C. §

1915A(b)(1).

        C.   The Excessive Force Claims

When an inmate alleges that excessive force was used by a correctional officer, the issue

is "whether force was applied in a good faith effort to maintain or restore discipline or

maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503

U.S. 1, 6 (1992). A *de minimis* use of force will rarely be sufficient to satisfy the objective

element unless that force also is "repugnant to the conscience of mankind." *Wilkins v. Gaddy*,

559 U.S. 34, 38 (2010) (quoting *Hudson*, 503 U.S. at 9-10 (internal quotation marks omitted)).

Nor is the extent of the inmate's injuries as a result of the defendant's conduct the critical issue

in determining the objective component. *See Wilkins*, 559 U.S. at 37 (the "core judicial inquiry"

is "not whether a certain quantum of injury was sustained," but rather whether unreasonable

force was applied given the circumstances); *Hudson*, 503 U.S. at 9 ("[w]hen prison officials

maliciously and sadistically use force to cause harm, contemporary standards of decency are

always violated" irrespective of whether significant injury was sustained).

The court considers several factors including "the need for application of force, the

relationship between that need and the amount of force used, the threat reasonably perceived by

the responsible officials, and any efforts made to temper the severity of a forceful response."

*Hudson*, 503 U.S. at 7 (internal quotation marks and citation omitted). Officers are liable not

only when they use excessive force themselves, but also when they fail to intervene to prevent

the use of excessive force by another officer when they are in a position to observe the conduct

and have time to intervene. *See Sloley v. VanBramer*, 945 F.3d 30, 46-47 (2d Cir. 2019).

"Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit

collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016).

In his second claim, Mr. Rashid alleges that defendants Does 1-8, Ffrench, and Briggs used excessive force against Mr. Rashid or failed to intervene to prevent the use of force. He alleges that he had not assaulted anyone and, in fact, was running from officers he believed intended to assault him when he was excessively sprayed with a chemical agent and assaulted. Further development of the record is needed on this claim to determine whether the application of force was necessary, what threat was perceived by correctional officers to warrant use of force, what efforts, if any, were made to temper the severity of the response, and whether any defendant had an opportunity to intervene to prevent the use of excessive force.

Accordingly, for now, the Eighth Amendment excessive force and failure to intervene claims against defendants Does 1-8, Ffrench, and Briggs will proceed for further development of the record.

### D.  The Conditions of Confinement Claims

"When reviewing the use of restraints under the Eighth Amendment, the court must consider the individual circumstances surrounding the use of restraints, including the length of time restraints were imposed and the objective sought to be served." *Alston v. Butkiewicus*, No. 3:09-cv-207(CSH), 2012 WL 6093887, at *11 (D. Conn. Dec. 7, 2012). Because "[m]aintaining order and security in a prison is a legitimate penological objective . . . the use of restraints that are reasonably related to maintaining prison order and security, without more, does not violate the Eighth Amendment." *Shehan v. Erfe*, No. 3:15-cv-1315(MPS), 2017 WL 53691, at *9 (D. Conn. Jan. 4, 2017); *see also Caballero v. Lantz*, No. 3:05-cv-140(CFD), 2008 WL 638397, at *3 (D. Conn. Mar. 5, 2008) ("The use of in-cell restraints in prisons is not prohibited by the Eighth Amendment and is certainly justified under many circumstances.").

In his third claim, Mr. Rashid alleges that defendants Does 1-8 and Ffrench permitted

him to be restrained for hours without bathroom access. Mr. Rashid alleges that he was taken to restrictive housing and held in in-cell restraints from approximately 7:00 p.m. until 1:00 a.m. He alleges that the restraints were tight and he was not released from the restraints to use the bathroom during that time. Mr. Rashid alleges that these actions violated his Eighth and Fourteenth Amendment rights.

Mr. Rashid further alleges that he did not assault any correctional officer, but force was used against him. At this stage of the case, it is not clear whether the use of restraints was warranted. In addition, Mr. Rashid alleges that the restraints were tight but nothing was done when he complained.  Nor was he permitted to use the bathroom during the eight hours he was restrained causing him to soil himself.

These allegations are sufficient to permit his Eighth Amendment claim to proceed against the Defendants alleged to be responsible for his placement, Does 1-8 and Ffrench.  *See Davis v. Rinaldi*, No. 3:19-cv-504(CSH), 2019 WL 7879729, at *11 (D. Conn. Oct. 31, 2019) (permitting Eighth Amendment claim for placement in restraints to proceed where plaintiff alleged that he did not start altercation and did not fight back*); see also Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (noting that "deprivation of bathroom breaks" where prisoner was confined "created a risk of particular discomfort and humiliation" contributed to punishment being considered cruel and unusual and noting harm from being denied change of clothing after defecating on oneself).

But as to these actions also violating his Fourteenth Amendment rights to due process and equal protection of the laws, "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process."  *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293

(1999) (internal quotation marks omitted)). Because the Eighth Amendment addresses Mr. Rashid's confinement claims, any substantive due process claim, based on the same factual allegations, will be dismissed under 8 U.S.C. § 1915A(b)(1).

To state an equal protection claim, Mr. Rashid must allege that: (1) he was treated differently from similarly situated individuals and (2) the difference in or discriminatory treatment was based on "impermissible considerations such as race, religion, intent to punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)).  As Mr. Rashid does not identify any similarly situated inmate who was treated differently, he cannot state a cognizable equal protection claim.  Any equal protection claim, therefore, will be dismissed under 28 U.S.C. § 1915A(b)(1).

Accordingly, as to Mr. Rashid's conditions of confinement claim, his Eighth Amendment claim will proceed, but his substantive due process and equal protections claims, ones arising out of the same factual allegations, will be dismissed.

### E.  Due Process Claim – Assault on Inmate Kalican

To state a claim for violation of his right to procedural due process, Mr. Rashid must allege facts showing that he had a protected liberty interest and that he was deprived of that interest without being afforded due process of law.  *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). The Due Process Clause, standing alone, generally does not create a protected liberty interest in conditions of confinement, as long as the conditions are "within the normal limits or range of custody which the conviction has authorized the State to impose." *Meachum v. Fano*, 427 U.S. 215, 228 (1976) (finding no protected liberty interest in freedom from interstate prison transfer, even to a

maximum security facility, because prison officials have discretion to transfer prisoners among correctional facilities "for whatever reason or for no reason at all"). There are circumstances under which a state statute, policy, or regulation, however, can create a protected liberty interest relating to conditions of confinement.

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court held that a liberty interest warranting due process protection "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Thus, to assess Mr. Rashid's claim, the Court must determine whether the sanctions imposed at the disciplinary hearing constitute an atypical and significant hardship.

In his fourth claim, Mr. Rashid contends that he was denied procedural due process in that defendants Grimaldi, Reyes, Santaniello, and Warden Doe permitted disciplinary action to be taken against him for assaulting inmate Kalican without any supporting evidence.

At the disciplinary hearing, Mr. Rashid received sanctions of three days confinement in punitive segregation, thirty days loss of mail, and thirty days loss of visits. *See* ECF No. 1 at 40. In *Sandin*, the Supreme Court held that confinement in the restrictive housing unit for thirty days for disciplinary reasons did not implicate a constitutionally protected liberty interest. 515 U.S. at 485-86 ("Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."). Further, the Second Circuit has held that confinement in restrictive housing for less than 101 days does not constitute an atypical and significant hardship sufficient to state a claim under *Sandin*. *See Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999) (finding that 101-day confinement in restrictive

14

housing, while "doubtless unpleasant," did not constitute atypical and significant hardship); *Lewis v. Sieminski*, No. 3:08-cv-728(JCH), 2010 WL3287991, at *6 (D. Conn. Sept. 22, 2010) (noting that "the decisions in the Second Circuit are unanimous that keeplock or [segregated housing unit] confinement of 20 days or less in New York prisons is not 'atypical or significant hardship' under *Sandin*").

As the Second Circuit has held that a brief confinement in restrictive housing, such as three days, does not constitute an atypical and significant hardship, this sanction is insufficient to support a claim for denial of due process. The additional sanctions of thirty days loss of mail and thirty days loss of visits, imposed sequentially after Mr. Rashid's release from RHU, do not alter this determination. *See Baldwin v. Arnone*, No. 3:12-cv-243(JCH), 2013 WL 628660, at *3, 8 (D. Conn. Feb. 19, 2013) (holding that sanctions of fifteen days confinement in punitive segregation followed by thirty days loss of recreation and ninety days loss of telephone privileges are insufficient to demonstrate atypical and significant hardship to support a due process claim under *Sandin*) (citing cases).

As Mr. Rashid's disciplinary sanctions do not constitute an atypical and significant hardship, he fails to state a plausible due process claim based on the guilty finding at the disciplinary hearing.

Accordingly, Mr. Rashid's Fourteenth Amendment due process claim relating to the assault on inmate Kalican will be dismissed under 28 U.S.C. § 1915A(b)(1).

> F.  Due Process Claim – Assault on Staff

When a criminal defendant pleads guilty, he "admits his guilt and waives all non-jurisdictional challenges to his conviction." *Sosa v. Cleaver*, No. 3:03-cv-1707(DJS)(TPS), 2005 WL 1205119, at *7 (D. Conn. May 18, 2005) (citing *United States v. Sykes*, 697 F.2d 87, 89 (2d

Cir. 1983)). Prisoners are afforded fewer rights in prison disciplinary proceedings than criminal

defendants receive at trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) ("Prison

disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

a defendant in such proceedings does not apply."). As a result, courts considering due process

claims have rejected those claims where the prisoner has pleaded guilty to the disciplinary

charge. *See Coleman v. Sutton,* 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) (plaintiff's plea of

guilty to the charges in disciplinary report "defeats any claim based on issuance of the report"),

*aff'd*, 355 F. App'x 566 (2d Cir. 2009); *see also Rodriguez v. Cook*, No. 3:20-cv-1902(CSH),

2022 WL 4104100, at *6 n.4 (D. Conn. Sept. 8, 2022) (plaintiff waived any procedural due

process challenge to disciplinary charges by entering guilty plea); *Sosa*, 2005 WL 1205119, at *7

(noting that "[r]esearch has revealed no cases permitting an inmate who has pled guilty to

disciplinary charges to challenge the propriety of the issuance of the disciplinary report").

      In his fifth, and final, claim, Mr. Rashid alleges that defendants Ffrench, Does, 1-8, and

Briggs permitted false charges to proceed against him for assault on staff both in state court and

prison disciplinary proceedings. But Mr. Rashid pleaded guilty to the disciplinary charge for

assault on staff, allegedly to be released from restrictive housing.  As a result, any due process

challenge to the disciplinary report for assault on staff will be dismissed under 28 U.S.C. §

1915A(b)(1).

      Mr. Rashid also challenges the allegedly false criminal charge asserted against him for

assault on staff as a denial of due process. But, to state a cognizable due process claim, Mr.

Rashid must allege facts showing that he was deprived of a protected liberty interest. Courts

considering due process claims based on charges filed against incarcerated persons have held,

however, that a prisoner has no due process claim where his period of incarceration was not

lengthened as a result of the new charges.  *See Parker v. City of New York*, No. 05 Civ. 1083(PKC)(GWG), 2008 WL 110904, at *9 (S.D.N.Y. Jan. 7, 2008) (plaintiff was not deprived of his liberty interest where the period of incarceration was not lengthened as a result of new charges brought against him while incarcerated); *Holmes v. Grant*, No. 03 Civ. 3426, 2006 WL 851753, at *14 (S.D.N.Y. Mar. 31, 2006) ("An inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses . . . .").

As Mr. Rashid was already incarcerated and does not allege that his sentence was lengthened, or even that he was convicted of the charge, he fails to state a plausible due process claim as a result of the state charges for assault on staff.

Accordingly, this due process claim will be dismissed under 28 U.S.C. § 1915A(b)(1).

G.   Declaratory and Injunctive Relief

Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationship." *Colabella v. American Inst. of Certified Pub. Accountants*, No. 10-cv-2291(KAM)(ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sept. 28, 2011) (citation omitted).  As such, "[d]eclaratory relief operates prospectively to enable parties to adjudicate claims before either side suffers great damages." *Orr v. Waterbury Police Dep't*, No. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018).  In *Orr*, the court dismissed the request for declaratory judgment that the defendants had violated the plaintiff's Fourth Amendment rights during his arrest because the request "concern[ed] only past actions." *Id.*

Mr. Rashid seeks a declaration that the actions of the defendants violated his various constitutional rights. As Mr. Rashid's request for declaratory relief concerns past actions, any

17

request for declaratory relief would not be cognizable.

Accordingly, the requests for declaratory relief will be dismissed.

Mr. Rashid's request for injunctive relief seeks expungement of the disciplinary finding and reduction of his classification which, presumably, was raised after the disciplinary proceedings. As the Court has dismissed all claims relating to the disciplinary proceedings, this request is dismissed as moot.

### H.  Official Capacity Claims

The Eleventh Amendment prohibits an award of damages against state officials in their official capacities unless the state has waived that immunity or Congress has abrogated it. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Section 1983 does not abrogate state sovereign immunity. *Quern v. Jordan*, 440 U.S. 332, 343 (1979).

Mr. Rashid does not indicate whether he names the defendants in their individual or official capacities.  As he included requests for declaratory and injunctive relief, the Court assumes that he named all defendants in both individual and official capacities.  However, the only remaining claims are for damages.

Nor does Mr. Rashid allege facts suggesting that the state has waived immunity in this case. Thus, as all defendants are state officials, Mr. Rashid cannot obtain damages from any defendant in his or her official capacity.

Accordingly, all claims for damages against the defendants in their official capacities will be dismissed under 28 U.S.C. § 1915A(b)(2).

### I.  Motion for Preliminary Injunction

Interim injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River*

18

*Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted). To prevail on his claim for mandatory relief, Mr. Rashid must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (internal quotation marks and citation omitted); *see also Hester ex rel. A.H. v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (to obtain mandatory preliminary injunctive relief against a government actor, plaintiff must, *inter alia*, "make a strong showing of irreparable harm" absent injunctive relief and "demonstrate a clear or substantial likelihood of success on the merits"). The Second Circuit considers a showing of irreparable harm the most important requirement for an award of preliminary injunctive relief. *See Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009).

The district court has wide discretion in determining whether to grant preliminary injunctive relief. *See Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506, 511 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted). The Supreme Court has repeatedly stated that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citations omitted). "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief. *Id.* (citation omitted).

In addition, allegations of irreparable harm or claims of a likelihood of success on the merits must be substantiated with admissible evidence. *Torrez v. Semple*, No. 3:17-cv-1223(SRU), 2017 WL 6624009, at *1 (D. Conn. Dec. 28, 2017); *see also Cox v. Morley*, No. 9:20-cv-1235(GLS/CFH), 2020 WL 6781522, at *10 n.13 (N.D.N.Y. Nov. 18, 2020) ("any renewed request for injunctive relief must be supported by evidence, as opposed to mere allegations, showing that the alleged irreparable harm is imminent"); *Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals.").

Mr. Rashid has filed a motion for preliminary injunction or temporary restraining order seeking orders that the Defendants (1) cease trying to intimidate him to hinder prosecution of this case; (2) provide him, and secure for trial, surveillance footage of the University of Connecticut hospital and loading dock and the Cheshire Correctional Institution AP room on the evening of May 22, 2023; (3) provide him the names of all John Doe defendants; and (4) protect his person, legal work, and books from harm by the defendants.

Mr. Rashid's motion appears to be based on speculation about possible future events.

Further, as one of the requirements for an award of preliminary injunctive relief is demonstration of a likelihood of success on the merits of his claims, Mr. Rashid's requests for preliminary injunctive relief must relate to the claims in the operative complaint. *See, e.g., DeBeers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945) (preliminary injunction inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit"); *McMillian v. Konecny*, No. 9:15-CV-0241(GTS/DJS), 2018 WL 813515, at *2 (N.D.N.Y. Feb. 9, 2018) (relief sought in motion for temporary restraining order or preliminary injunction must relate to claims in complaint); *Torres v. UConn Health*, No. 3:17-cv-325(SRU), 2017 WL

3713521, at *2 (D. Conn. Aug. 29, 2017) (preliminary injunctive relief not warranted because claim in motion was unrelated to underlying claims in complaint).

Mr. Rashid's claims in this case concern the use of excessive force and related disciplinary proceedings that occurred in February 2022, while Mr. Rashid was confined at MacDougall-Walker Correctional Institution. He is now confined at Cheshire Correctional Institution. And the requests in his motion do not concern the use of force incident or the disciplinary proceedings. Rather they deal with matters occurring at Cheshire Correctional Institution around May 2023, over a year later and involve persons who are not defendants in this case.

Finally, Mr. Rashid cannot obtain preliminary injunctive relief from persons who are not named as defendants. *See* Fed. R. Civ. P. 65(d)(2) (injunction binding only on parties); *Lapierre v. Lavalley*, No. 9:15-cv-1499(MAD/DJS), 2016 WL 4442799, at *3 (N.D.N.Y. Aug. 23, 2016) (plaintiff could not seek injunctive relief against correctional staff at prison to which he had been transferred as they were not defendants in the case and could not seek injunctive relief against staff at former facility because transfer mooted request for injunctive relief); *Oliphant v. Villano*, No. 3:09-cv-862(JBA), 2010 WL 5069879, at *2 (D. Conn. Dec. 3, 2010) (holding that the court lacks jurisdiction to enjoin conduct of prison mental health, medical, and correctional staff who are not defendants in the case).

Accordingly, Mr. Rashid's motion for preliminary injunction or temporary restraining order will be denied. As for the information sought regarding the identities of the John Does currently in this lawsuit, an Initial Discovery Disclosure Order will be issued in conjunction with this order requiring the Defendants to provide the names of witnesses having relevant

information, which presumably includes the Doe defendants, as they are alleged to have participated in the use of force.

### III.   <u>Conclusion</u>

All claims asserted in sub-complaints two through four are **SEVERED** under Federal Rule of Civil Procedure 21 and **DISMISSED** without prejudice to refiling in separate actions.

The Clerk of Court is directed to terminate defendants Pierce, Blackstock, Schiender, Bell, Broadley, Cruz, and Williams from this action.

All Fourteenth Amendment claims for denial of substantive and procedural due process and equal protection of the laws, all claims against inmate Kalican, all requests for declaratory and injunctive relief, and all requests for damages against the defendants in their official capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1) and (2).

The Clerk of Court also is directed to terminate defendants Grimaldi, Reyes, Santaniello, and Warden Doe from this action.

The case will proceed on the Eighth Amendment claims relating to the use of force and failure to intervene against defendants Does 1-8, Ffrench, and Briggs in their individual capacities and the Eighth Amendment conditions of confinement claim regarding confinement in restraints and denial of access to a bathroom against defendants Does 1-8 and Ffrench in their individual capacities.

Mr. Rashid's motion for preliminary injunction or temporary restraining order [**ECF No. 9**] is **DENIED**.

The Court enters the following additional orders.

(1)    **The Clerk of Court shall** contact the Department of Correction Office of Legal Affairs to ascertain current service addresses for defendants Ffrench and Briggs, mail a waiver of service of process request packet containing the Complaint and this Order to each defendant at the address provided by **September 29, 2023**, and report to the court on the status of the waiver request by **October 13, 2023**.  If any Defendant fails to return the waiver request, the Clerk of Court shall arrange for in-person service by the U.S. Marshals Service on Defendant in his individual capacity and the defendant shall be required to pay the cost of such service.

(2)    **The Clerk of Court shall** send Plaintiff a copy of this Order.

(3)    **The Clerk of Court shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)    Defendants shall file their response to the complaint, either an Answer or Motion to Dismiss, by **December 15, 2023**.  If they choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)    Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed by **May 17, 2024**.  Discovery requests need not be filed with the court.

(6)    All motions for summary judgment shall be filed by **June 21, 2024**.

(7)    Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.

Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify Defendants or the attorney for Defendants of his new address.

(9)     Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on Defendants' counsel by regular mail.

(10)     The Clerk of Court shall immediately enter the District of Connecticut Standing Order Re: Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a copy to Plaintiff.

(11)     The Court cannot effect service on defendants Doe 1-8 without their full names and current work or service addresses. Plaintiff is directed to obtain this information through discovery and file a notice containing the information. Once the notice has been filed, the Court will order service on defendants Doe 1-8.

SO ORDERED.

Dated this 1st day of September 2023 at Bridgeport, Connecticut.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge